ALBERT BAERENKLAU et al.

*v.*

PEERLESS REALTY COMPANY et al.

[Submitted February 19th, 1912. Decided February 21st, 1912.]

1. A penalty, stipulated in a contract for a breach thereof, is oftentimes construed as a liquidation of damages agreed by the parties to be paid in the event of a breach, in lieu of the ascertainment and award of damages.

2. Where it is difficult to ascertain the damages for a breach of contract, the parties thereto may stipulate for the payment of a specified sum as liquidated damages.

3. The measure of damages for a purchaser's breach of contract by refusal to take the land is the difference between the contract price and the value of the land, and in case the land has increased in value there may be really no damages, and only in case of a decline in value may there be any substantial recovery.

4. A contract for the sale and purchase of real estate stipulated for the payment of the price in instalments, and declared that on default in payment of any instalment for sixty days all instalments previously paid should, at the option of the vendor, become forfeited. The purchaser paid instalments irregularly, in some instances in advance and in some instances after a default for sixty days. The vendor accepted the past-due instalments without objection.—*Held*, that the vendor waived its right to claim a forfeiture, and the purchaser on paying the balance of the price, with interest, could compel specific performance.

Suit for the specific performance of a written contract to convey real estate. Heard on bill, answer, replication and proofs taken in open court.

*Mr. Francis V. Dobbins,* for the complainants.

*Mr. Jacob L. Newman,* for the defendants.

STEVENSON, V. C. (orally). ·

I shall first dispose of the case of Albert Baerenklau and August Faust against the Peerless Realty Company, which was tried and argued day before yesterday.

The suit is brought by these complainants to compel the specific performance of a contract to convey real estate in the town of Woodbridge, Middlesex county, in this state. The owner of the property who entered into the contract with the complainants, which contract is now before me, at that time was the Rahway Park Realty Company. The contract was made between the Rahway Park Realty Company of the first part, and these complainants, Baerenklau and Faust of the second part. It bears date February 16th, 1909, and provides for the sale of thirty lots in a large tract, which the company had laid out, to the complainants for the price of $1,200, which was to be paid as follows: One hundred dollars at or before the signing of the agreement, and at least $40 on or before the sixteenth day of every month thereafter, beginning April 16th, 1909. After a number of instalments had been paid, including the first instalment of $100, all the interest of the Rahway Park Realty Company was transferred to the Peerless Realty Company, the present defendant, no new equity having been in any way introduced into the case by this assignment. The Peerless company took the place of the Rahway Park Realty Company and assumed its obligations.

The complainants paid their $100, and then, from month to month, made, I think, twenty-two payments—was it, Mr. Dobbins?

Mr. Dobbins—"I think it was."

—making, in all, $980, and then they tendered a payment of $40 to the company and the company declined to accept it. A little later, I think a month or two later, the complainants tendered the entire balance of the purchase price, with interest, amounting to $260 or $270 to the company and demanded their deed, and this tender was refused. The complainants now file this bill to

compel the specific performance of this contract to get their deed upon their paying the remainder of the purchase price.

·The only defence set up in the answer, apart from mere formal denials which were not sustained by the evidence, is based upon the following covenant in this contract of February 16th, 1909:

> "The party of the second part agrees that should any default be made in the payment of any installments as herein provided, and such default continues for sixty days, all installments previously paid shall, at the option of the party of the first part, without any notice or demand, be and become forfeited irrevocably and beyond demand and be retained by the party of the first part as liquidated damages, and thereupon this agreement shall determine and be of no further effect. The party of the first part, however, in the event of default as aforesaid, has the right to enforce specific performance of this agreement."

Although it is not perhaps a very important feature of the case, it is worth while to point out at the start the hardship of this contract—the one-sidedness of it. The realty company at all times, in case of a default for sixty days in the payment of any one of these instalments, has the option, if we take this contract just as it reads, either to compel the purchasers, these complainants, to pay the rest of the price and take their deed—which, no doubt, they would do if the land declined in value, or if the price was a large price compared with the value of the land and the default had been made at an early stage of this business when only perhaps one instalment had been paid—or to keep all that had been paid and declare the contract ended and all rights of the purchasers extinguished, which, of course, they would have a powerful, selfish motive to do in this case, as $980 of the $1,200 had been paid.

The defendants stand before this court with $980 of the complainants' money in its treasury, the land not having declined in value, and they say: "We will keep the land; we won't accept your $270, the remainder of the principal and interest; we will keep your money and we will keep your land." It is a case of very, very great hardship. It would, perhaps, be singular if nowhere in law or equity any escape could be found for these unfortunate complainants.

I want, at the beginning, to advert to the legal character of this contract and its legal construction, a matter which was sug-

gested to counsel during the argument, but which they did not consider. I should not at present discuss the matter at all if the decision of this case turned upon it—turned upon the legal construction of this contract or the extent of its enforceability in the courts of law. It would be my duty, I think, to order a reargument. But the decision in this court is controlled by another point, and inasmuch as the case may go to the appellate court for final determination, it may be worth while, and I think it is proper to suggest to counsel some of the strictly legal questions which appear upon the face of this covenant for a forfeiture.

Of course, it is now familiar law that, in both courts of law and equity, a penalty, so called, in a contract is oftentimes construed as a liquidation of damages—as an alternative amount which the parties agree shall be paid in lieu of the ascertainment and award of damages, and, on the other hand, courts are very courageous in construing an agreement which expressly provides for liquidated damages as an agreement providing for a penalty only.

A great deal of the law on this subject, illustrating how the phrase "liquidated damages" has been construed as equivalent to "penalty," has arisen in cases where an agreement has contained a great many different covenants relating to different things, the breach of which involved different amounts of damage, and then there is, in conclusion, a sweeping provision that if there is any default in any of the covenants in the agreement contained, the party of the one part shall pay to the party of the other part a certain specified sum of money which shall be deemed liquidated damages and not a penalty. The courts have refused in very many cases to enforce that sort of a contract. They have treated the sum specified as a penalty.

The leading case in this state is *Whitfield* v. *Levy, 35 N. J. Law (6 Vr.) 149,* a decision of the court of errors and appeals, in which Mr. Justice Depue, with his characteristic industry and learning, examines a long series of authorities. In that case Mr. Justice Depue points out that oftentimes the courts will find, in a contract which provides for the payment of a sum as liquidated damages, an *intent* otherwise in the minds of the contracting parties—an *intent* to secure performance—an intent, perhaps, gen-

erally to provide for compensation for a breach, and that there really is not an intention, as the parties seem to say, that a large sum of money shall be paid, in the event of the breach of a condition of one covenant among a number where the damages, in fact, must be very small.

Well, perhaps, that is as far as we have gone in New Jersey in dealing with this subject, but there is a line of cases, I think, in England, and I think in many of the states in this country, which are more courageous and take a different view. These cases are cited, to some extent, in the article on liquidated damages in the nineteenth volume of the American and English Encyclopedia of Law, pages 410 and 411. I will read the section—one of the sections—on that page. It is entitled, "Where Sum Named Disproportionate to Actual Damages."

"*General rule.*—The general rule, as stated, where the sum named in a contract to be paid on a breach is wholly disproportionate to the actual damages sustained is that the courts will deem the parties to have intended to stipulate for a mere penalty to secure performance, and not for a liquidation of the damages. But the view is believed to be not so much that such circumstance is indicative of the intent of the parties to stipulate for a penalty as that *the courts refuse to depart from the rule of actual compensation, where this can be ascertained.*"

I doubt if any contract could be found in a reported case which is exposed to more obvious criticism than the one here before this court at present. The damages never could be difficult of ascertainment under this contract. One of the main reasons for permitting the parties to liquidate their damages, or to stipulate for the payment of a sum in lieu of having an award and ascertainment of damages—one of the main reasons is because of the difficulty of exactly measuring the damages. The courts say that the parties are competent to say what shall be the measure of compensation for a breach; it is difficult for a court and jury to ascertain it.

There is no such difficulty here; the rule defining the measure of damages is well settled. At whatever stage there might be a violation of this contract, the measure of recovery is well ascertained—what the realty company could recover, in case of a

violation of this contract on the part of these complainants to take the land and pay the price. They are entitled to the difference between the contract price and the value of the property. In the event of the property rising in value there really is no damage at all. Only in case of a decline in value is there any substantial recovery possible on the part of the realty company, the vendor under this contract.

And then, in this case, we have not a definite sum—five hundred dollars, a thousand dollars, fifty dollars—which the parties deliberately select and say, "that shall be the measure of damages that shall be paid in lieu of having the actual damages ascertained"—nothing of the kind. The contract provides that the whole amount paid, which might be forty dollars, one instalment, or might be ten hundred and sixty dollars—the whole amount paid, in case of a default for more than sixty days shall be forfeited and the forfeit is then to be taken as the amount which the parties agree upon as a liquidation of the damages.

A more grotesque transaction than that, from a legal standpoint, could hardly be imagined. The parties have not fixed upon any certain sum as the measure of, or substitute for, the defendants' damages. If the covenant is to be literally enforced, it is somewhat in the nature of a wagering contract, in view of the various and uncertain causes which might produce the fatal default and the widely different amounts of money ranging from one hundred dollars to eleven hundred and sixty dollars, which the defendant might receive for its so-called damages, according as the default might occur after a few or after many instalments had been paid. We have here not a case of indefinite damages, difficult of exact ascertainment, "liquidated" at a definite sum agreed upon by the parties, but very definite damages, easily ascertained, liquidated at an amount which the parties do not fix and could not have contemplated—the amount of a widely varying forfeit, which might be one hundred dollars or might be eleven hundred and sixty dollars, or any intermediate sum.

It may be that the courts of law of this state would feel obliged to enforce this covenant according to what seems to me to be its perfectly plain meaning, unless by some subtle process

of artificial reasoning a fictitious "intention" otherwise could be extracted from the verbiage of the covenant and be equitably imputed to the parties.

But whether the courts of law of New Jersey, or the court of chancery of New Jersey, would hold that this covenant is legally enforceable so as to permit the defendant, first, to declare a forfeiture and then appropriate the entire amount forfeited as a liquidation of his damages—whether any court would so decide, I do not say. I merely indicate to counsel interested that there are strong grounds for holding that the whole legal fabric of the defendants' defense might be swept away.

But, in the absence of argument and in the absence of mature consideration of this matter, I deem it my duty not to pass upon this question of penalty or liquidated damages, which I certainly would have to do if, in my judgment, the case did not turn upon another point.

Whatever the legal effect of this covenant may be, whatever its legal construction, whatever the extent of its legal enforceability, when it comes to equity the case is very different. The question is whether this forfeiture and agreement for the liquidation of the damages by the appropriation of the forfeited money can be made a bar to the relief of the complainants in equity—the relief of specific performance which they pray for. The leading case in this state bearing on this branch of the case is *Griggs* v. *Landis, 21 N. J. Eq. (6 C. E. Gr.) 494*, a case in the court of errors and appeals, decided in 1870, in which the opinion was written by Mr. Justice Scudder. I read from page 501:

"Penalties, forfeitures and re-entries for conditions broken are not favored in equity, and constitute a large branch of equitable relief. Usually, they are held to be securities for the payment of money and the performance of conditions, and where compensation can be made for non-payment and non-performance equity will relieve against the rigid enforcement of the contract. This is upon the general principle that a court of equity is a court of conscience, and will permit nothing to be done within its jurisdiction which is unconscionable."

Prof. Pomeroy, in his work on *Specific Performance,* in sections 334 and 335, in dealing with the distinction between conditions precedent and conditions subsequent in contracts, points out:

"That equity can and does grant relief in case of the breach of such a condition, provided that adequate compensation can be made."

And he proceeds as follows:

"No relief, however, will be granted in case of a subsequent condition if the breach of it was intentional, willful, nor where it will not admit of compensation. When, however, the only default of the plaintiff is delay, and the position of the defendant has not been materially changed thereby, a performance after the stipulated time may entitle the plaintiff to a decree for a specific execution since *mere* lapse of time is not, in general, a sufficient ground in equity for the refusal of relief. A forfeiture caused by the non-payment of money, however express may be the language of the contract, will, as a general rule, be relieved from, on the theory that interest is a sufficient compensation."

It would seem that the complainants' case is clearly within these principles, and yet I do not find that it is necessary for me to stand the case on those principles because of another important feature of the case which, to my mind, makes the true determination of this controversy absolutely clear.

The complainants paid their money irregularly. In some instances, perhaps more than two, they paid two instalments within one month. I think in one or two instances they paid in advance. Am I right about that, Mr. Dobbins?

Mr. Dobbins—"In six instances."

The Court—A larger number than I supposed. They paid their instalments in advance, and then they fell behind and were in arrears for perhaps two weeks, three weeks, four weeks, and finally, in December, 1910, after they had paid about seven hundred and forty dollars—more than half the consideration, the price—they made a monthly payment of $40 three or four days after they had been in default for sixty days. They went to the office of the company and tendered their money, and the money was received without objection. Nor does it appear that the company in any way pointed out to the complainants that they were in arrears or warned them that a repetition of

the offense would bring about a forfeiture. They accepted the money. And then, in January—on January 24th, 1911—the complainants, being I think nine or ten days in arrears, made another payment and that was accepted. In February they made another payment which was, I think, three weeks—twenty days—in arrears; and then in March they made another payment and a still longer period had elapsed during which they were in arrears, and all these four payments in succession were received by the land company without protest and without warning after the complainants had been in default for more than sixty days.

Now, I think it is very clear that this conduct on the part of the realty company amounted to a waiver of their right to claim a forfeiture without notice, without warning, so that the complainants could again be put upon their guard. They established an order of business between themselves and the complainants which is inconsistent with the terms of this covenant. They lured the complainants along to make these payments—to pay $160—and kept still and said nothing about any forfeiture at all, and after the $160 had been added to the $700 or $800 previously paid, so that the aggregate amount of money which the complainants had paid had reached $980, then they shut down and said, "You are too late; we now elect to declare a forfeiture and appropriate this money as the measure of damages agreed upon in the contract."

Equity will not allow transactions like that.

If courts of equity could tolerate a performance of that character they might as well close. The idea still prevails that in courts of equity the human conscience has some function—that the rigidity and the hardship of the law are mitigated.

I think it is very plain that this is the sort of a case in which the defendants have sought to set up an unconscionable defence and that their defence rests essentially upon their own conduct—is the product of their own conduct. They have by their conduct largely created the conditions out of which this defence arises and upon which the defence is based.

My conclusion is that the complainants are entitled to a decree for specific performance in the usual form in a case like

this, providing for the payment of the balance of the price, with interest, by the complainants, and the delivery of the deed by the defendants. Whether it is necessary to have the decree carried out under the direction of a master may be determined on the settlement of the decree.